IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL D'AMICO, Administratrix | : | CIVIL ACTION |
| of the Estate of FRANCES CHAIRIERI | : | |
| | : | |
| v. | : | |
| | : | |
| GARLOCK SEALING TECHNOLOGIES, | : | NO. 92-5544 |
| LLC, et al. | : | |

O'NEILL, J.                                          SEPTEMBER 10, 2007

## MEMORANDUM

Plaintiff's decedent Alfred Chairieri was diagnosed with mesothelioma on November 8, 1990 and passed away on February 1, 1991. On September 23, 1992, plaintiff's estate filed a complaint alleging plaintiff's decedent developed and died from mesothelioma as a result of exposure to asbestos from the products of defendant Pneumo Abex LLC's predecessor-in-interest Abex Corporation and eleven other companies while he worked as a welding inspector for Conrail and its predecessors from 1941 through 1981. Before me now are defendant Abex's motion for summary judgment, plaintiff's response and defendant's reply.

## BACKGROUND

To establish that decedent breathed in asbestos dust or fibers from defendant Abex's products, plaintiff relies exclusively on the deposition testimony of decedent's co-worker Angelo Balestino. Angelo Balestino worked as a car repairman and welder at Conrail's Hollidaysburg Car Shop from 1966 to 1982. In his deposition, Balestino identified Abex as a familiar name, asserted that Abex's products were made from asbestos, and recalled that those products created dust. Specifically, Balestino stated:

1

Q.      Do you remember working with any products at that time manufactured by Abex Corporation?

A.      Abex is a familiar name.

Q.      Okay.

A.      They made brake linings and ...all I remember they made linings, brake linings and brakes...

Q.      Okay.

A.      ...I think they made brake shoes also.

Q.      Let's talk about the brake linings.  Do you know what the brake linings were made out of?

A.      They were made out of asbestos.

Q.      Okay.  And how do you know that they were made out of asbestos?

A.      Well, we put them....when we put them in the...when we built or rebuilt the trucks, we had to use them and put them in the ...it was part of the truck.  And they had...I guess they had the label, there was a label on the pack, on the box when you received it.

Q.      Okay.  Can you recall at all what that label looked like?

A.      No, I can't recall.  It was a cardboard box and the name was on there.

Q.      When you worked with the brake linings, was there any dust created?

A.      There was.

Q.      How was there dust created?

A.      When you took it out of the box and put...you had to put it in and naturally dust was created while you're putting it in these linings, putting the lining in the brakes.

Q.      Okay.  The brake shoes that you worked with at that time, do you know what they were made out of?

A.      They were made out of asbestos.

Q.      And how do you know that?

A.      We knew at that time they were made out of asbestos.

Q.      Okay.  Where did you get that information from though?  How did you know?

A.      Well, it was on...we got that from the store department, the store house department.

Q.      Okay, and who informed you that they were made out of asbestos?

A.      The store department.


. . . .


Q.      The brake shoes that you worked with at that time, do you know what they were made out of?

A.      They were made out of asbestos.

Q.      Do you know who made the brake shoes?

A.      Bendix and Abex.

Q.      Okay.  Can you describe the brake shoes for me?  Did they have a name on the

2

> brake shoes or...
> A.    They had a name on them.
> Q.    Okay.  Do you recall what names you would see on the brake shoes?
> A.    I just gave you them.
> Q.    And was there dust created while you were working with these brake shoes?
> A.    There was dust created.

Balestino also indicated that decedent worked around his area:

> Q.    Okay.  Did Alfred Francis Chairieri work in this area with you?
> A.    He worked around that area that I was in.

> . . . .

> Q.    Okay.  Was Mr. Chairieri...what percentage of the time, while you were removing these materials was Mr. Chairieri around you on a daily basis?
> A.    I don't know where he was around that time.  The only time...when I was welding, he was around.

Later in his deposition, Balestino contradicted his earlier testimony, testifying that he did

not have know whether or not the Abex brakes he worked with were made from asbestos:

> Q.    Now, you said that the brakes contained asbestos, the Abex brakes contained asbestos.
> A.    Right.
> Q.    How do you know that?
> A.    Well, we were all told that. . . .

> . . . .

> Q.    Do you know if any of the Abex brakes that you were working with were non-asbestos?
> A.    Not that I know of.
> Q.    Do you know one way or the other?
> A.    Not that I know of.

Despite his general declarations that decedent was "around" the work area, Balestino

could not recall decedent's presence in the workplace while Abex products were used:

> Q.    Okay.  I'm just trying to get your specific recollection.  I don't know...I don't want you to guess, I just want to know if you can recall or tell me how long he would

3

be in the area on those occasions when you saw him in the area while brake work
was being done?

A.   I can't answer that honestly.

Q.   Okay.

A.   Because like I said, that shop was about three quarter of a mile long, that Sam
Rae.  He starts at one shop and comes down the other end, you know, I can't say
how long he's in the shop.

. . . .

Q.   And how close would he be when he was in the area when brakes were being...

A.   I just mentioned before.  I told you, he was over my shoulder a lot of times
watching me weld.

Q.   Okay.

A.   So he's over my shoulder and I'm welding so, as an illustration.  Other times, I
don't know how close he was.

Q.   Okay.

A.   I'm giving a specific time how close he was there.

Q.   Alright.  But when you were doing brake work, you can't say how close he might
have been to you?

A.   I don't know how close he was then.

Q.   And is it correct then, you can't say that you have a specific recollection of him
being in the area while brake work was being done with Abex brakes?

[Objection to form by counsel]

A.   I can't recollect him being there.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that

summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  An issue of material fact is genuine if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

255 (1986).  Summary judgment will be granted "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

4

party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. <u>Id.</u> at 322-23. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. <u>See</u> <u>Anderson</u>, 477 U.S. at 255. Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. <u>Williams v.</u> <u>Borough of W. Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989). However, the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against'" the moving party. <u>Ely v. Hall's Motor Transit Co.</u>, 590 F.2d 62, 66 (3d Cir. 1978), <u>quoting</u> <u>Smith v. Pittsburgh Gage & Supply Co.</u>, 464 F.2d 870, 878 (3d Cir. 1972).

In asbestos litigation under Pennsylvania law, plaintiff must present evidence that he inhaled asbestos fibers shed by the specific defendant's product. <u>Wilson v. A.P. Green Indus.,</u> <u>Inc.</u>, 807 A.2d 922, 924 (Pa. Super. Ct. 2002), <u>citing</u> <u>Eckenrod v. GAF Corp.</u>, 544 A.2d 50, 52 (Pa. Super. Ct. 1988). "Ideally, a plaintiff . . . will be able to directly testify that plaintiff breathed in asbestos fibers and that those fibers came from defendant's product." <u>Wilson</u>, 807 A.2d at 924. "Without such direct evidence, plaintiff must rely on circumstantial evidence of exposure; specifically, plaintiff must meet [the test established by <u>Eckenrod</u>]. <u>Gilbert v. Monsey</u>

Prods. Co., 861 A.2d 275, 276 (Pa. Super. Ct. 2004).  Under the Eckenrod test, plaintiff's

evidence of exposure must show that he "worked, on a regular basis, in physical proximity with

the product, and that his contact with it was of such a nature as to raise a reasonable inference

that he inhaled asbestos fibers that emanated from it."  Coward v. Owens-Corning Fiberglass

Corp., 729 A.2d 614, 622 (Pa. Super. Ct. 1999), citing Eckenrod, 544 A.2d at 53.

       In Eckenrod, the Pennsylvania Superior Court affirmed a grant of summary judgment in

favor of defendant asbestos manufacturers because plaintiff failed to provide sufficient evidence

of decedent's exposure to defendants' products.  544 A.2d at 52.  Although plaintiff presented

evidence that defendants' asbestos-containing products were sent to the furnace area of plaintiff's

employer and that plaintiff worked somewhere in the vicinity of those products, the Court

concluded that the evidence was insufficient because it "did not elaborate on the nature or length

of the exposure or the brand of products available."  Id.  With respect to the products of a

defendant in Robertson v. Allied Signal, Inc., the Court of Appeals similarly found that

"testimony [was] insufficient to establish the specific regular use of these products required by

Eckenrod.  While several witnesses were able to place [defendant's] products in the plant, no

witness was able to say how much of the product was used and how many times it was used in a

given area."  914 F.2d 360, 378 (3d Cir. 1990), quoted in Rotondo v. Keene Corp., 956 F.2d

436, 440 (3d Cir. 1992).  The Court of Appeals concluded that the Eckenrod standard had not

been met because plaintiffs had submitted no evidence "that any plaintiff was exposed to or

worked in the vicinity of any [defendant] product on a regular basis."  Id., quoted in Rotondo,

956 F.2d at 440.

As direct evidence is unavailable in this case, plaintiff must rely on circumstantial evidence of decedent's exposure to asbestos from defendant Abex's products.  Plaintiff's evidence regarding exposure to defendant's products therefore must satisfy the requirements of frequency, regularity and proximity set forth in <u>Eckenrod</u>.  In its motion for summary judgment, defendant Abex argues that the evidence regarding decedent's exposure to Abex products fails as a matter of law to satisfy the <u>Eckenrod</u> test.  I agree.

I first note that plaintiff admits at paragraphs 10, 11 and 12 of her answer to Abex's motion that the deposition testimony of decedent's co-workers Edward Burger, Louie DiFolco and Frederick J. Gehl is insufficient to raise a genuine issue of material fact.  As stated above, plaintiff relies exclusively on the testimony of decedent's co-worker Angelo Balestino in response to defendant Abex's motion for summary judgment.  However, Balestino expressly stated that he could not recollect that decedent was present while Abex's products were used.  Balestino further acknowledged that he did not know how close decedent was while he was doing brake work.  Balestino also could not answer honestly how long decedent would be in the work area while brake work was being done.

In light of the above statements, Balestino's testimony does not demonstrate that decedent was exposed to or worked in the vicinity of Abex's products on a regular basis.  Balestino's vague assertions that decedent "was around the area" or that decedent "worked around that area that I was in" do not satisfy the requirements set forth in <u>Eckenrod</u>.  As in <u>Eckenrod</u>, plaintiff's evidence here at best establishes that decedent worked somewhere in the vicinity of defendant's product.  Yet because Balestino had no specific recollection of decedent's presence while Abex products were used, any connection made by Balestino between Abex's products and decedent is

7

merely speculative.

Because I find that Balestino's testimony is insufficient to create a genuine issue of material fact regarding decedent's exposure to asbestos dust or fibers[1] shed from any product of defendant Abex, I will grant defendant Abex's motion for summary judgment.[2]

An appropriate Order follows.

---

[1]I further note that Balestino offered self-contradictory testimony regarding his knowledge of whether Abex brakes were made from asbestos.

[2]Because I decide Abex's motion on different grounds, I need not discuss Abex's argument that plaintiff's claims are preempted by federal laws governing railroad equipment safety.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL D'AMICO, Administratrix | : | CIVIL ACTION |
| of the Estate of FRANCES CHAIRIERI | : | |
| | : | |
| v. | : | |
| | : | |
| GARLOCK SEALING TECHNOLOGIES, | : | NO. 92-5544 |
| LLC, et al. | : | |

## ORDER

AND NOW, this 10th day of September 2007, upon consideration of defendant Abex's motion for summary judgment, plaintiff's response and defendant's reply, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that defendant's motion for summary judgment is GRANTED.

s/Thomas N. O'Neill, Jr.
THOMAS N. O'NEILL, JR., J.